UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMAR CLEMONS,

                  Petitioner,           Case No. 2:15-cv-12646
                                              Hon. Denise Page Hood

CARMEN PALMER,

                  Respondent.

_____/

**OPINION AND ORDER 1) DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS, 2) DENYING CERTIFICATE OF APPEALABILITY, AND 3) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This matter is before the Court on Petitioner Lamar Clemons' petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Petitioner was convicted in the Oakland Circuit Court after a jury trial of first-degree murder. MICH. COMP. LAWS. § 750.316. He was sentenced to life imprisonment with no possibility of parole. The petition raises seven claims: (1) there was insufficient evidence presented at trial to sustain Petitioner's conviction, (2) Petitioner's trial counsel was ineffective for failing to request a more detailed accessory-after-the-fact jury instruction, (3) Petitioner's trial counsel was ineffective for failing to move to redact references to a polygraph test from Petitioner's videotaped statement to police, (4) Petitioner's trial was rendered fundamentally unfair by the admission of gruesome photographs, (5)

Petitioner's trial counsel was ineffective in numerous other ways, (6) the prosecutor committed misconduct during closing arguments, and (7) Petitioner was denied his right to be present when witnesses testified against his co-defendant outside his presence.

The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability, but it will grant him permission to proceed on appeal in forma pauperis.

## I. Facts and Procedural History

Petitioner's convictions result from the shooting death of Jonathan Clements, who had arranged on the internet website Craigslist to purchase a cell phone from Petitioner's co-defendant, Alexander Lyons.

The evidence presented at trial indicated that Lyons agreed to come to Hazel Park, where Clements lived, to sell his phone. Lyons asked Petitioner for a ride to Hazel Park. Before driving to Hazel Park, though, evidence suggested that Petitioner drove Lyons to another residence where Lyons picked-up a handgun. Lyons promised to pay Petitioner $30 for the ride.

Evidence was presented indicating that Petitioner knew Lyons had previously schemed to use Craigslist to find a robbery victim. Petitioner had

also seen Lyons two days earlier with a gun.

The two men drove to Hazel Park in Petitioner's car. Lyons texted Clements to let him know they were having a hard time finding his address. Petitioner then parked in a bank parking lot close to Clements' address. Lyons got out of the car and walked out of Petitioner's line of sight.

Petitioner waited in his car, and he heard two noises that sounded like gunfire. Lyons came running back to the car, told Petitioner he messed up, and Petitioner drove them home. The next day Petitioner drove Lyons to a house where Lyons returned the gun to Jeremy Baker, its owner.

The next day, police officers pulled Petitioner's vehicle over for a traffic stop. Lyons was a passenger in the car. A detective investigating the shooting was called to the scene and interviewed Petitioner. Petitioner denied that he was with Lyons on the previous day, and he said he knew nothing about the Hazel Park shooting.

Petitioner voluntarily came to the Hazel Park police station the next day to talk to the detective again. Petitioner told the detective he drove Lyons to Hazel Park two days before. Lyons said he was going there to sell his cell phone. In a second interview, however, Petitioner admitted that Lyons told him he was planning to commit a robbery. Dkt. 6-5, at 90-91, 117. Petitioner told

3

the detective that immediately prior to Lyons leaving his car to meet with the buyer, Petitioner believed there was going to be a robbery. Id., at 117. Petitioner told the detective that he believed Lyons was armed with a gun on the day of the shooting, though he never saw it. Id., at 116.

Based on this evidence, Petitioner was convicted of first-degree murder under an aiding and abetting theory and sentenced to life imprisonment.

Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate brief raised the following claims:

> I. Where the evidence did not prove beyond a reasonable doubt that Defendant-Appellant Lamar Clemons knew of his co-defendant's larceny plan until after he had driven the co-defendant to the scene of the crime, it was legally insufficient to prove that he aided and abetted the larceny and thus insufficient to sustain his felony-murder conviction.
>
> II. Counsel was ineffective for not insisting that the jury instructions make clear that if the jury believed Mr. Clemons to have been an accessory after the fact it should acquit him of the murder charges.
>
> III. Counsel was ineffective for not insisting that the interrogation video be redacted to remove the interrogation's questions about Lamar Clemons's willingness to undergo a polygraph examination and Mr. Clemons's equivocal responses, and for instead expressing satisfaction with the trial judge's inadequate cautionary instruction.
>
> IV. The trial judge denied Mr. Clemons a fair trial by admitting, over his lawyer's objection, a particularly gruesome autopsy photograph that was far more prejudicial than probative.

4

Petitioner also filed a pro se supplemental brief that raised the following claims:

I. Defendant was denied his constitutional right to the effective assistance of trial counsel in violation of the Sixth Amendment counsel's cumulative errors prejudice defendant to a fair trial.

II. Defendant was denied a fair trial because of prosecutor misconduct during closing arguments.

III. The defendant was denied his constitutional right to be present at all stages of his aiding and abetting trial when he was not allowed to hear the testimony of critical witnesses that testified at his co-defendant's trial in violation of the Due Process Clause.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *People v. Clemons*, No. 306463 (Mich. Ct. App. Dec. 26, 2013). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Clemons*, 853 N.W.2d 100 (Mich. 2014).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

5

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

6

disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

To obtain relief under § 2254(d)(2), a petitioner must show an unreasonable determination of fact and that the resulting state court decision was "based on" that unreasonable determination. *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2012). However,  a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## III. Analysis

7

A. Sufficiency of the Evidence

Petitioner's first claim asserts there was constitutionally insufficient evidence presented at trial to support his conviction. Specifically, Petitioner argues that the prosecutor did not submit sufficient evidence to prove that Petitioner knew Lyons would commit a larceny at the time he assisted Lyons to be guilty of first-degree felony murder under an aiding or abetting theory. Petitioner asserts that he did not know that Lyons would commit the larceny until after he already dropped Lyons off, and any further assistance was performed after the crime was already complete. The Michigan Court of Appeals rejected this claim on the merits on direct review.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* A habeas court is required to examine the evidence supporting the conviction in the light most favorable to

8

the prosecution with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16.

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and § 2254(d) apply to Petitioner's claims, "'the law commands deference at two levels in this case: First, deference should be given to the trier of fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier of fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).

The Michigan Court of Appeals rejected Petitioner's claim by reciting the evidence presented tending to show that Petitioner knew of Lyons' intent to commit a larceny before he dropped Lyons off at the scene of the crime:

> Detective Sergeant Craig Fowler's testimony established defendant Clemons's concession that near the time that defendant Lyons disembarked from the Camaro in Highland Park, defendant Lyons communicated to defendant Clemons that he no longer wanted to sell his phone. Although defendant Clemons equivocated about his knowledge of a potential robbery during his second police interview, he ultimately acknowledged that he believed that defendant Lyons probably intended to rob the victim.

9

Defendant Clemons also told Fowler about defendant Lyons's placement of a prior Craigslist advertisement to sell a Ford Thunderbird that he did not really intend to sell, but instead wanted to use to ensnare a robbery victim. Defendant Clemons further conceded that, despite his belief that defendant Lyons likely would rob the victim, defendant Clemons remained in the Camaro awaiting defendant Lyons's return from his encounter with the victim, even after hearing gunshots. Reasonable inferences arise from these circumstances that defendant Clemons assisted defendant Lyons by acting as a getaway driver, with knowledge that defendant Lyons intended to rob the victim. *People v. Martin*, 150 Mich. App. 630, 634-635 (1986) (affirming the defendant's armed robbery conviction as an aider and abettor where the evidence established reasonable inferences that he had "knowingly acted as the driver of the 'get-away car'"). Accordingly, we reject defendant Clemons's challenge to the sufficiency of the evidence supporting his conviction.

*Clemons*, No. 306463, at 6.

As a matter of Michigan law, an aider or abettor must have "the same requisite intent as a principal." See, e.g., *People v. Barrera*, 451 Mich. 261, 294 (1996). To support a finding that Petitioner assisted in the commission of Lyons's larceny, the evidence had to show "that (1) the [larceny] was committed by the defendant or some other person, (2) [Petitioner] performed acts or gave encouragement that assisted the commission of the [larceny], and (3) [Petitioner] intended the commission of the [larceny] or had knowledge that the principal intended its commission at the time he gave aid and encouragement." *People v. Carines*, 460 Mich. 750, 757-78 (1999).

10

Here, viewed most favorably to the prosecution, the evidence indicated that Petitioner admitted he knew Lyons was armed with a gun and knew that Lyons planned to steal the victim's phone when Lyons exited Petitioner's car. Petitioner aided the commission of the crime with knowledge that Lyons would commit a larceny by waiting in his car to drive Lyons away from the scene after commission of the offense.

Indeed, the case presents a rather ordinary scenario of a defendant aiding and abetting a crime by serving as the getaway driver. See, e.g., *People v. Meriwether*, 2016 Mich. App. LEXIS 1525 (Mich. Ct. App. Aug. 16, 2016) (defendant getaway driver convicted under aiding and abetting theory when he knew of principal's intent to commit robbery); *People v. Anderson*, 2015 Mich. App. LEXIS 2270, at 5-6 (Mich. Ct. App. Dec. 8, 2015) (same); *People v. Brown*, 2015 Mich. App. LEXIS 762, 5-6 (Mich. Ct. App. Apr. 16, 2015) (same); *Davis v. Lafler*, 658 F.3d 525, 533 (6th Cir. 2011) (same); *Aslinger v. Curtin*, 2014 U.S. Dist. LEXIS 48817, at 14-16 ( E.D. Mich. Mar. 31, 2014). The evidence presented at trial viewed through the *Jackson* lens, therefore, allowed for the Michigan Court of Appeals to reasonably reject Petitioner's sufficiency of the evidence claim. This claim does not merit habeas relief.

11

B. Failure to Request Detailed Accessory-After-the-Fact Jury Instruction

Petitioner next argues that he was denied the effective assistance of counsel when his trial counsel failed to ensure that the trial court gave an accessory-after-the-fact jury instruction that adequately distinguished an accessory after the fact from an aider or abettor. The Michigan Court of Appeals rejected this claim on direct appeal, noting that Petitioner was not charged with being an accessory after the fact, and finding that the jury instructions correctly informed the jury of the applicable law. The state court concluded that Petitioner's counsel was therefore not ineffective for requesting a more detailed instruction.

Under established Supreme Court law, counsel is ineffective when his performance falls below an objective standard of reasonableness and thereby prejudices his client. See *Strickland v. Washington*, 466 U.S. 668, 687-88, 691-92 (1984). To satisfy the performance element, a defendant must point to some action "outside the wide range of professionally competent assistance." *Id.* at 690. To satisfy the prejudice element, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

12

On habeas review, a federal court must apply a doubly deferential standard of review: "[T]he question [under § 2254(d)] is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

The state appellate court rejected Petitioner's claim as follows:

In defendant Clemons's principal brief on appeal, he initially contends that trial counsel was ineffective for failing to ensure adequate jury instruction clarifying the distinction between an accessory after the fact and aiding or abetting the commission of a felony murder during the commission of a larceny. Our review of the record reveals that the trial court instructed the jury on aiding and abetting in accordance with CJI2d 8.1 and accurately summarized the law governing aiding and abetting. The instructions also contained a subsequent paragraph that correctly conveyed the content of CJI2d 8.2, the mere presence instruction, and a paragraph that correctly defined an accessory after the fact. CJI2d 8.6(1). Here the prosecutor did not charge defendant Clemons with accessory after the fact, and defendant Clemons does not challenge on appeal the prosecutor's broad discretion to select the charges ultimately brought against him. *People v. Nichols*, 262 Mich. App. 408, 415 (2004). Furthermore, accessory after the fact is not an inferior offense to first-degree murder, and defendant Clemons thus had no right for his jury to hear an instruction with respect to being an accessory after the fact. See *People v. Perry*, 460 Mich. 55, 62-63 (1999) (observing that the "common-law offense of accessory after the fact is not in the same class or category as murder" and, therefore, "the common-law offense of accessory after the fact is not a cognate offense of murder"). Because defendant Clemons had no legal right to an instruction on accessory after the fact, trial counsel's failure to ensure that the jury received additional instructions

13

consistent with CJI2d 8.6(2) - (6) or 8.7 (outlining the distinction "[b]etween aider and abettor and accessory after the fact") was not objectively unreasonable. *Solmonson*, 261 Mich. App. at 663. Moreover, we perceive no potential prejudice to defendant Clemons relating to the jury instructions because they apprised his jury in plain terms about the legal distinction between an aider and abettor and an accessory after the fact. *Id.* at 663-664.

*Clemons*, No. 306463, at 8-9.

This decision was reasonable in light of the record of the jury instructions. The trial court instructed the jury that to find Petitioner guilty of first-degree felony murder, the prosecutor must prove beyond a reasonable doubt, among other elements, that Petitioner "had one of these states of mind. He intended to kill, or he intended to do great bodily harm to Jonathan Clements, or he knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely results of his actions." Dkt. 6-7, at 52-53. The Court went on to instruct the jury that Petitioner "must have been either committing or helping someone else commit the crime of larceny. To help means to perform acts or give encouragement *before or during the commission of the crime*, that aids or assists in its commission." Id., at 53 (emphasis added). The court then cautioned the jury that "even if the Defendant knew that the alleged crime was planned or was being committed, the mere fact that he was present when it was committed

14

is not enough to prove that he assisted in committing it." Id., at 55. The court finally instructed the jury that "an accessory after the fact is someone who *after the crime had ended* knowingly helps a felon avoid discovery, arrest, trial, or punishment." Id. (emphasis added). Written copies of the instructions were provided to the jury for their deliberations.

In light of this record, the jury was adequately instructed that aiding or abetting occurs before or during a crime, and accessory after the fact occurs after a crime is completed. Whether the jury instruction accurately informed the jury about the requirements of state law is an issue that is not cognizable by this Court. See *Estelle v. McGuire*, 502 U.S. 62, 75 (1991); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas review"). There is not a reasonable probability that the result of the trial would have been different had defense counsel asked for a more thorough instruction, because as the state appellate court found, the jury was accurately instructed.

Accordingly, the state appellate court's decision did not result in an unreasonable application of the *Strickland* standard.

15

C. Failure to Move to Redact Portions of Petitioner's Statement to Police

Petitioner next asserts that his counsel was ineffective for failing to move the trial court to redact the portions of his statement to police that referred to the possibility of submitting to a polygraph examination. The Michigan Court of Appeals rejected the claim as follows:

> Defendant Clemons lastly argues in his principal brief on appeal that trial counsel was ineffective for not sufficiently objecting to Fowler's references to a potential polygraph examination when the prosecutor played defendant Clemons's video-recorded statement. When the recorded statement was played for the jury, defense counsel raised objections at a bench conference, which led the trial court to instruct the jury: "Ladies and gentlemen, you have heard on this recording references to a polygraph. I am instructing you that polygraph examinations are not admissible in the State of Michigan. So whether or not a polygraph was given is of no consequence in this matter." (Emphasis added). The parties agree that in the course of defendant Clemons's video-recorded statement, there were several references to his potential willingness to undergo a polygraph examination. However, the trial court's cautionary instruction broadly instructed the jury not to consider the inadmissible matter whether defendant Clemons underwent a polygraph examination, and courts presume that jurors follow the instructions they receive. *People v. Unger*, 278 Mich. App. 210, 235 (2008). We conclude that defense counsel acted in a reasonably professional manner by seeking the cautionary instruction, and no reasonable likelihood exists that the outcome of defendant Clemons's trial would have differed had defense counsel requested further instruction regarding the polygraph examination. *Solmonson*, 261 Mich App at 663-664.

*Clemons*, No. 306463, at 8-9.

16

The Michigan Court of Appeals did not unreasonably apply the *Strickland* standard in rejecting this claim. Counsel's decision to ask for a cautionary instruction rather than request a mistrial was a matter of sound trial strategy that cannot be second-guessed under the *Strickland* standard. See, e.g., *O'Donnell v. Gundy*, 2007 U.S. Dist. LEXIS 99088 (W.D. Mich. Jan. 8, 2007).

Petitioner cannot establish that he was prejudiced by his counsel's failure to move for redaction. A trial court's instructions to the jury generally are presumed to have been followed. *Bales v. Bell*, 788 F.3d 568, 579 (6th Cir. 2015). In order for this Court to find that Petitioner was prejudiced by his counsel's failure to move for redaction of his statements, it would have to conclude that the jury used the reference to a polygraph examination against him despite the trial court's cautionary instructions.  This the Court will not do. Petitioner has not demonstrated any reason why the presumption that a jury follows its instructions should not be applied to this case.

The mere reference to a polygraph examination did not render Petitioner's trial fundamentally unfair. The mention of a polygraph does not run afoul clearly established Federal law. "[T]he Supreme Court has not held that admission of testimony relating to a truth test renders a trial

17

fundamentally unfair." *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005). There was nothing inherently prejudicial about the mention of a possible test. The jury was not told whether a test was ever administered, nor what the results were. Rather, they were told to disregard the reference altogether.

Accordingly, this claim does not provide a basis for granting habeas relief.

D. Admission of Gruesome Photograph

Petitioner next argues that his trial was rendered fundamentally unfair by the admission of gruesome photographs of the victim's wounds. Petitioner asserts that the photographs were irrelevant to the case against him, as the prosecutor's theory was that he only aided Lyons. Given that he was not alleged to have directly committed the crime, Petitioner asserts that admission of the photographs only served to create unfair prejudice against him.

This claim must be denied because it cannot be supported by clearly established Supreme Court law. Indeed, The Sixth Circuit repeatedly has held that the introduction of gruesome photographs of a victim's corpse in a murder case does not offend the Constitution. See, e.g., *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) ("The [state] court found, however, that the

photographs were properly admitted as they demonstrated that *Biros* beat Engstrom rather severely and meticulously dissected her body with two different knives."); *Frazier v. Huffman*, 343 F.3d 780, 789 (6th Cir. 2003) ("The Ohio Supreme Court directly addressed this evidentiary issue, concluding that the multiple photographs 'were introduced during the coroner's testimony to illustrate the testimony,' that '[e]ach photograph presents a different perspective of the victim,' and that the photographs 'were used to illustrate' the nature of the encounter that immediately preceded Skiba's death.") (citation omitted); *Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002).

The photographs in this case were less inflammatory than in *Biros*, where the Sixth Circuit upheld the admission of photographs depicting a victim's severed head, severed breast, and severed body parts placed near the victim's torso. See *Biros*, 422 F.3d at 391. Accordingly, Petitioner cannot establish a due process violation arising from admission of the photographs.

E. Additional Claims of Ineffective Assistance of Counsel

Petitioner presented the state courts with additional claims of ineffective assistance of counsel in his pro se supplemental brief that were rejected on the merits by the Michigan Court of Appeals. These claims were also reasonably rejected in light of the deferential *Strickland* standard of review.

19

Petitioner claims that his counsel did not share discovery materials with him before trial. But Petitioner did not present the state courts with any argument as to how this alleged failure prejudiced his defense. A court may deny a claim of ineffective assistance of counsel when it is unaccompanied by specific allegations. "[I]issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997). This claim was reasonably rejected by the state courts.

Petitioner also asserts that his counsel failed to call Lyons' friend, Browder, who testified before Lyons' jury about incriminating statements Lyons made after the crime. In the cited testimony, Browder recalled Lyons telling him that he shot someone in Hazel Park, that he "fucked up," and that he tried to rob the victim. It is difficult to see how this testimony would have benefitted Petitioner. It is not surprising that Browder did not testify that Lyons told him about Petitioner's involvement: he was not asked about it. The same thing holds true for Latasha Pettas. Petitioner proffers no evidence that Lyons made statements to her that would have benefitted Petitioner's defense.

20

A habeas petitioner's claim that trial counsel was ineffective for failing to call a witness cannot be based on speculation. See *Keith v. Mitchell*, 455 F. 3d 662, 672 (6th Cir. 2006). A petitioner must provide the substance of the witness testimony, and here Petitioner has not done so. See *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007); *Malcum v. Burt*, 276 F.Supp.2d 664, 679 (E.D. Mich. 2003). The state courts reasonably rejected this allegation.

Petitioner asserts that his counsel was ineffective for failing to object to the admission of Lyons' statements to a detective on the grounds that it violated Petitioner's rights under the Confrontation Clause. As the Michigan Court of Appeals noted, the testimony in question consisted of preliminary questioning that led the detective to interview Petitioner. The statements were not offered for the truth of the matter asserted, but to explain the course of the police investigation. Petitioner's confrontation rights were therefore not implicated. See, e.g., *United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004) ("Because the statements were not offered to prove the truth of the matter asserted, the Confrontation Clause does not apply.") Counsel was not ineffective for failing to make a meritless objection. *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013).

Petitioner finally asserts that his counsel should have moved to

21

suppress the detective's references to an approximate five-minute portion of Petitioner's statement on the grounds that the police intentionally failed to record this portion of the interrogation.

> The Michigan Court of Appeals rejected the claim as follows:
>
> Fowler testified that the first "five minutes or so" of defendant Clemons's second statement were not recorded because the officer who "was suppose[d] to turn that on . . . didn't do so." Defendant Clemons has not substantiated any bad faith activity by the police concerning the recording of his second interview. *Hoag*, 460 Mich. at 6. Furthermore, defendant Clemons offers no legal authority tending to support an argument that the failure to record the entirety of a defendant's statement renders the entirety of the statement subject to exclusion. See *People v. Geno*, 261 Mich. App. 624, 627 (2004). We conclude that defendant has not substantiated an objectively unreasonable deficiency in defense counsel's failure to file a motion to suppress the recorded statement or object to the statement's incompleteness. *Id.*

*Clemons*, No. 306463, at 12.

This was a reasonable basis for rejecting the claim. Again, Petitioner did not proffer to the state courts any evidence to support his allegation of misconduct by the police. In any event, during his cross examination of the detective, Petitioner's counsel repeatedly questioned the detective about the fact that the recorded portion of Petitioner's statement did not contain the admission that the detective claimed Petitioner made in the non-recorded portion.  Dkt. 6-5, at 110, 111 ("If we were to play that video back, are we

gonna hear Lamar say I knew the man was going to rob that boy?"), 112, 116-17. Defense counsel's conduct in challenging the detective's testimony was not deficient, and the state court therefore reasonably rejected this claim.

F. Prosecutorial Misconduct

Petitioner's next claim asserts that the prosecutor committed acts of misconduct that rendered his trial unfair. He argues that the prosecutor appealed to the sympathy of the jury, made statements that were not supported by the evidence, improperly referred to Lyons' prior bad acts as indicating Petitioner's knowledge of Lyons' intent, and expressed a personal belief in Petitioner's guilt.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair

23

based on the totality of the circumstances. *Donnelly*, 416 U.S. at 643-45. In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155, 183 L. Ed. 2d 32 (2012)(quoting *Harrington*, 562 U.S. at 103).

None of Petitioner's claims of prosecutorial misconduct merit relief. First, Petitioner asserts that the prosecutor appealed to the sympathies of the jury. During closing argument, in apparent reference to a comment made by defense counsel in his opening statement, the prosecutor referred to the fact that the victim was young, and his family would never speak to him again. The comment was brief, and the prosecutor went on to present a theory of guilt based on the evidence presented.  The prosecutor stated,

> Let me respond to one thing in opening statement which went to my desire to have you ladies and gentlemen promise me that you would follow the jury instructions as the Judge gives you.  Not to let sympathy impact anything you do in deliberations.  The reason I say that is because during opening statement Mr. Arnkoff (defense counsel) stood up and said they want to treat this Defendant the same as Mr. Lyons.  I want you to follow the jury instructions.   That's all I want you to do is follow the jury instructions, and you will find him guilty.  That's called sympathy.  It's not even a fact.  It's not an element.  It has nothing to do with

24

it.  It's sympathy.

And you hear during the course of this trial over and over
this is a capital offense.  They're going to go away forever.  That's
called sympathy as well.  Don't think about it.  Don't let that
interfere with your deliberations.

Dkt. No. 6-6, at 9-10.  The prosecutor was arguing that defense counsel's

statements during opening statements were made to appeal to the jury's

sympathy for Petitioner—that Petitioner's role did not rise to the same level as

Mr. Lyons' role in the death of the victim.  The prosecutor then spoke about

the victim, stating,

You want to talk about sympathy?  Think about Johnathan
Clements, who on April 24th of this year would have turned
twenty.  He's not going to turn twenty-one, twenty-two, twenty-
three, twenty-five years later he's going to be forty-four years old.
But guess what, none of his family members can get on the phone
and talk to him again.  None of his family members can go visit
him ever again because these two individuals, Mr. Lyons and Mr.
Clemons took his life.

Dkt. No. 6-6, at 10-11.  The prosecutor then argued what knowledge

Petitioner possessed as to what Mr. Lyons was intending to do with the victim.

A prosecutor may not make statements "calculated to incite the

passions and prejudices of the jury." *United States v. Solivan*, 937 F.2d 1146,

1153 (6th Cir. 1991). The Court agrees with Petitioner that the complained-of

remark was gratuitous and unnecessary. However, any potential prejudice to

Petitioner was mitigated by the fact that the trial court instructed the jurors about the elements of the crimes and the burden of proof, directed them not to let sympathy or prejudice influence their decision, and explained that the attorneys' questions and arguments are not evidence. As stated, jurors are presumed to follow the trial court's instructions. *Cockream v. Jones*, 382 F. App'x 479, 486 (6th Cir. 2010). This claim was not unreasonably rejected by the Michigan Court of Appeals.

Next, Petitioner asserts that the prosecutor made arguments not supported by the evidence. The assertion is incorrect. The prosecutor repeatedly asserted that Petitioner knew Lyons was going to rob the victim when he was in the car with Petitioner. This argument was supported by the detective's testimony that Petitioner admitted to him that he knew a robbery would occur. While Petitioner disputes that he made this statement, the detective testified that the statement was made.

Petitioner complains that the prosecutor argued that Lyons told him to wait for him after the robbery without any such testimony having been presented. Because there was evidence presented that Petitioner knew a robbery would occur, and because the evidence indicated that Petitioner, in fact, waited for Lyons to return, the comment was a fair inference based on

the evidence presented. See *Martin v. Foltz*, 773 F.2d 711, 717 (6th Cir. 1985) (prosecutor may argue permissible inferences from the evidence).

Petitioner argues that the prosecutor improperly referred to evidence of Lyons' prior bad acts. The Court discerns no impropriety in the remark. Evidence was presented that Petitioner knew Lyons had committed or had attempted to commit a similar crime using Craigslist in the past. That knowledge provided for a inference, albeit not a strong one, that Petitioner had a reason to believe that Lyons intended to do so again. This is especially true given the circumstantial evidence presented that Petitioner drove Lyons to a location to pick up the gun prior to driving to Hazel Park. The evidence of Petitioner's knowledge of the prior conduct lended support to the theory that Petitioner discussed Lyons' intentions with him in during the car ride. The comment was not improper, and it was based on the evidence presented.

Finally, Petitioner asserts that the prosecutor expressed a personal belief in his guilt. A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses because such personal assurances of guilt "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181

27

F.3d 731, 737 (6th Cir. 1999). A review of the closing argument indicates that the prosecutor here indicated that the jury should convict Petitioner based on the evidence presented, and not merely because he personally believed that Petitioner was guilty. The prosecutor stated, "[l]ook at the evidence, determine what you believe the facts to be. Apply what you feel the facts are to the law that the Judge is going to get you – give you." Dkt. 6-6, at 41. The prosecutor referred to the elements he was required to prove Petitioner's guilt. Dkt. 6-6, at 20-21. The prosecutor then referred to both the direct and circumstantial evidence presented at trial. The prosecutor stated,

> Look at the – what they call is the direct evidence. That's what the Defendant says, I was involved in it. I did this. I did that. Look at the circumstantial evidence, which is what I'm talking about here in going to get the gun. Him driving Mr. Lyons there. Him knowing that Mr. Lyons is a bad person. Waiting there while Mr. Lyons is walking up the street.

Dkt. 6-6, at 41-42. The prosecutor argued to the jury that he had met the elements he was required to prove under an aiding or abetting theory. Dkt. 6-6, at 41-43. The prosecutor stated, "[t]hat's why I ask that you find him guilty because he did assist. He knowingly assisted, and he's as responsible under the law as Mr. Lyons for the death of Mr. Clements." Dkt. 6-6, at 43.

None of Petitioner's claims of prosecutorial misconduct are meritorious, and they were all reasonably rejected by the Michigan Court of Appeals.

28

G. Petitioner's Absence During Portion of Trial

Petitioner finally asserts that his right to be present at trial was violated when he was absent during portions of his co-defendant's trial. This claim is meritless because it cannot be supported by clearly established Supreme Court law. "[I]f there is no 'clearly established Federal law, as determined by the Supreme Court' that supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(1)). Petitioner has not identified any authority, let alone clearly established Supreme Court law, that creates a right to be present at a co-defendant's portion of a trial.

Contrary to Petitioner's assertions, the testimony elicited during this portion of the trial was not beneficial to Petitioner's defense. Whether Lyons' friend and his girlfriend would have testified that Lyons made statements to them favorable to Petitioner is entirely speculative and unsupported by the trial record. The claim does not merit relief.

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial

29

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37.

The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims. The Court will, however, grant permission to appeal in forma pauperis, because an appeal would not be frivolous. 28 U.S.C. § 1915(a)(3).

### V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH**

**PREJUDICE**.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Amend or Supplement his Habeas Petition (Doc. No. 8) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to appeal in forma pauperis is **GRANTED**.

                              S/Denise Page Hood
                              Denise Page Hood
                              Chief Judge, United States District Court

Dated: October 31, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 31, 2016, by electronic and/or ordinary mail.

                              S/LaShawn R. Saulsberry
                              Case Manager

31